PEOPLE v DUNIGAN

Docket No. 306654. Submitted February 7, 2013, at Detroit. Decided
     February 26, 2013, at 9:00 a.m. Leave to appeal denied, 494 Mich
     870.
     An Oakland Circuit Court jury, Leo Bowman, J., convicted Antonio
     Dunigan of second-degree home invasion, MCL 750.110a(3), for
     the theft of a cashbox from his girlfriend's home. Defendant
     appealed.
          The Court of Appeals *held*:
          1. Under MCL 750.110a(3), second-degree home invasion re-
     quires proof that the defendant entered a dwelling by breaking or
     without the permission of any person in ownership or lawful
     possession or control of the dwelling and did so with the intent to
     commit a felony, larceny, or assault therein or committed a felony,
     larceny, or assault while entering, present in, or exiting the
     dwelling. There is no breaking if the defendant had the right to
     enter the building, which defendant argued he had. The fact that
     a person is in a dating relationship, however, does not entitle that
     person to be present in his or her partner's dwelling at will. The
     victim had affirmatively refused defendant's requests for a key, a
     garage door opener, and alarm access codes for her house. The
     record overwhelmingly showed that defendant had no right to be
     in the house at the time of the invasion.
          2. Defendant also argued that there was insufficient evidence to
     prove that he was the perpetrator. While there was a dearth of direct
     evidence that he committed the crime, the circumstantial evidence
     was substantial, including the victim's testimony about defendant's
     actions and his returning stolen items from the cashbox, shoe prints
     that matched defendant's shoes, and testimony that defendant spent
     the night of the home invasion gambling using $100 bills, the
     denomination of approximately 100 of the bills in the cashbox.
     Viewed in the light most favorable to the prosecution, there was
     sufficient evidence for the jury to conclude beyond a reasonable doubt
     that defendant entered his girlfriend's home without permission and
     with the intent to commit a larceny in it.
          3. Defendant was not denied the right to a fair trial because, from
     a review of the entire record, one juror was observed sleeping during
     the first day of testimony. Juror misconduct will not warrant a new

trial unless the party seeking the new trial can show that the misconduct affected the impartiality of the jury or disqualified the jurors from exercising the powers of reason and judgment. The record does not reveal egregiousness of that sort. The trial court properly admonished the juror, and there is no indication of what, if any, testimony the juror missed. Defendant failed to articulate how he was prejudiced and made only the bare assertion that the juror could not fairly and competently consider the charges against him and therefore was not qualified to give a verdict.

4. Defendant similarly failed to support his contention that his trial counsel was ineffective for failing to seek the exclusion of the juror or jurors allegedly sleeping. A defendant must at a minimum establish that any mistake made by counsel prejudiced him or her, meaning that there was a reasonable probability that the proceedings would have had a different outcome if counsel had not made the alleged error. Defendant did not show that the sleeping juror affected the outcome of the proceedings. Furthermore, assuming that the juror missed any testimony, it would have been testimony from the prosecution's witnesses, and defense counsel could reasonably have made a strategic decision to assume that the juror's missing that testimony would have helped the defense. A reviewing court will not substitute its judgment for that of counsel regarding matters of trial strategy.

5. Defendant argued that he was denied his right of self-representation under the Sixth Amendment, Const 1963, art 1, § 13, and MCL 763.1. To invoke the right of self-representation, (1) a defendant must make an unequivocal request to represent himself or herself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must determine that the defendant's acting as his or her own counsel will not disrupt, unduly inconvenience, or burden the court and the administration of the court's business. Defendant did not provide a transcript on appeal, and the record did not show an unequivocal request to represent himself.

6. The prosecutor's comments during closing argument that the victim's testimony was uncontroverted were proper argument. Defendant argued that the comments constituted prosecutorial misconduct because only he could have contradicted the testimony, so the comments interfered with his right against self-incrimination. The constitutional privilege against self-incrimination and the right to due process restrict the use of a defendant's silence in a criminal trial. However, the prosecutor may fairly respond to defense arguments. The comments were a

proper response to defendant's arguments and theory of the case that the entire case against him rested on the victim's testimony. The trial court gave clear instructions that the attorneys' arguments were not evidence and on the burden of proof and defendant's right to not testify. Defense counsel was not ineffective for failing to raise a meritless objection to the comments.

7. Defense counsel was also not ineffective for failing to obtain casino records that defendant maintained were exculpatory or provided impeachment evidence. Decisions regarding what evidence to present are presumed to be matters of trial strategy, and a reviewing court will not second-guess them. The records did not provide an alibi and might have suggested to the jury a motive for defendant to commit the crime.

Affirmed.

1. BURGLARY — SECOND-DEGREE HOME INVASION — ENTERING A DWELLING WITHOUT PERMISSION — RIGHT TO BE PRESENT IN BUILDING — DATING RELATIONSHIPS.

Second-degree home invasion requires proof that the defendant entered a dwelling by breaking or without the permission of any person in ownership or lawful possession or control of the dwelling and did so with the intent to commit a felony, larceny, or assault therein or committed a felony, larceny, or assault while entering, present in, or exiting the dwelling; there is no breaking if the defendant had the right to enter the building, but the fact that a person is in a dating relationship does not entitle that person to be present in his or her partner's dwelling at will (MCL 750.110a[3]).

2. CONSTITUTIONAL LAW — SELF-REPRESENTATION — REQUESTS.

To invoke the right of self-representation, (1) a defendant must make an unequivocal request to represent himself or herself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must determine that the defendant's acting as his or her own counsel will not disrupt, unduly inconvenience, or burden the court and the administration of the court's business (US Const, Am VI; Const 1963, art 1, § 13; MCL 763.1).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Danielle Walton*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari K. Grove*) for defendant.

Before: SHAPIRO, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. Defendant appeals as of right his jury trial conviction of second-degree home invasion, MCL 750.110a(3). He was sentenced to 5 to 40 years' imprisonment. We affirm.

Second-degree home invasion requires proof that the defendant entered a dwelling by breaking or without the permission of any person in ownership or lawful possession or control of the dwelling and did so with the intent to commit a felony, larceny, or assault therein or committed a felony, larceny, or assault while entering, present in, or exiting the dwelling. MCL 750.110a. "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). We do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence, *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). It is the jury's duty to determine the weight to be accorded any inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant first asserts that the evidence at trial was insufficient to support his conviction. Defendant argues that there was insufficient evidence to establish that he

was the person who committed the home invasion; he also argues that he had a right to be in the dwelling, so he could not properly be convicted of home invasion of that building. We disagree with both contentions.

In reverse order, defendant's contention that he could not be convicted of home invasion because he had a right to be in the dwelling turns on the fact that the dwelling belonged to his girlfriend. "There is no breaking if the defendant had the right to enter the building." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441(1998). However, the fact that a person is in a dating relationship in no way entitles that person to be present in his or her partner's dwelling at will. The fact that defendant spent some nights at the house is immaterial. In any event, even if we were to presume that defendant had some right to be in the house—which he did not—it is possible to "break and enter" one's own home if one has lost the legal right to be present in that home, for example, by operation of a court order. *People v Szpara*, 196 Mich App 270, 272-274; 492 NW2d 804 (1992). In this case, not only did defendant's relationship not confer any rights upon him, his girlfriend had affirmatively refused his repeated requests for a key, a garage door opener, and alarm access codes for the house. The record overwhelmingly shows, and the jury would have properly concluded, that defendant had no right to be in the house at the time of the invasion.

Moreover, defendant's theory of his defense was that he was not the perpetrator, not that it was technically impossible for him to have committed his charged offense. There would have been no reason for defense counsel to request a jury instruction specifying that the jury must find that defendant could not break into a home that he had a right to enter. Indeed, that instruction would have been inconsistent with, and potentially

detrimental to, defendant's theory that he was not the perpetrator and had been falsely accused by the victim. Failing to request a particular jury instruction can be a matter of trial strategy. *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003). Trial counsel has "wide discretion in matters of trial strategy . . . ." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Because requesting an instruction about permission to enter could have confused the jury by suggesting that defendant might have been the perpetrator, we conclude that trial counsel's failure to request the instruction has not been shown to be unsound strategy or ineffective assistance.

Defendant also contends, consistently with his theory at trial, that the evidence did not show him to have been the individual who committed the breaking and entering and theft of his girlfriend's cashbox. However, there was only a dearth of *direct* evidence that he committed the crime. The circumstantial evidence was substantial. The victim testified that defendant was the only person who knew where she kept the missing cashbox in her desk drawer and that he had seen the contents—including more than $10,000 in $100 bills—recently when she told him that she had won jackpots at the casino. She testified that defendant remained behind her and walked out of the house that morning after her, which was unusual. Positioning himself to leave the house last allowed defendant the opportunity to leave the kitchen door unlocked and unlock the pedestrian door to the garage as he walked to his car, which was parked at the street. The victim also recognized shoe prints left in the kitchen after the break-in as matching defendant's work shoes. Notably, there was no sign of a forced entry, the footprints in the house matched defendant's work boots, and nothing in the house was disturbed other than the cashbox, about which only defendant knew.

Additionally, the victim suspected defendant almost immediately given defendant's unusual behavior when the victim noticed that her cashbox was missing. When she questioned defendant the next day, defendant admitted that he had stolen the cashbox, which also contained a flash drive and paperwork. Defendant returned the flash drive to her and explained that he had used some of the money to repair his car and gambled away the rest. Defendant also explained that he had bound the paperwork with a rubber band and dropped it into a mailbox. He accompanied her to the mailbox and then to the post office in an attempt to retrieve the bundle. The post office window supervisor confirmed the visit and testified that the rubber-banded paperwork bundle turned up at the post office the next day. A private investigator hired by the victim had observed defendant on the night of the home invasion gambling heavily using $100 bills. The prosecutor also established that defendant had a motive to steal because he had been unemployed for many months and had a gambling problem.

In summary, the evidence, when viewed in the light most favorable to the prosecution, strongly supported the conclusion that defendant entered the victim's home without permission and with the intent to commit a larceny therein. Therefore, the prosecutor presented sufficient evidence to conclude that the elements of second-degree home invasion were proved beyond a reasonable doubt.

Defendant next contends that he was denied his right to a fair trial because two jurors were noticed to be sleeping during the first day of testimony. Defendant further contends that trial counsel was ineffective for failing to seek the jurors' exclusion. We disagree with both contentions.

An allegation of juror misconduct, even if the alleged misconduct did actually occur, will not warrant a new trial unless the party seeking the new trial can show " 'that the misconduct [was] such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment.' " *People v Nick*, 360 Mich 219, 230; 103 NW2d 435 (1960) (citation omitted). Simply put, the record does not reveal any such egregiousness. Indeed, the record reveals, contrary to defendant's assertion, that only one juror had been observed to be sleeping. The trial court properly admonished the juror, but there is no indication of what, if any, testimony the juror missed. More importantly, defendant fails to articulate how he was prejudiced. He only makes the bare assertion that the juror could not fairly and competently consider the charges against him and therefore was not qualified to give a verdict. Based on the entire record of this trial, defendant fails to demonstrate that this assertion has any basis in fact.

Defendant sought a remand for an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), concerning his counsel's ineffectiveness; however, because this Court denied defendant's motion, review is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Among other things, a defendant must at a minimum establish that any mistake made by counsel prejudiced the defendant, meaning there is a reasonable probability that the proceedings would have had a different outcome if counsel had not made the alleged error. See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Once again, defendant has not shown that the sleeping juror affected the outcome of the proceedings. Furthermore, assuming the juror missed any testimony, it would have been testimony from the prosecution's witnesses; defense counsel could reason-

ably have made a strategic decision to assume that the juror's missing that testimony would have helped the defense. This Court will "neither substitute[] its judgment for that of counsel regarding matters of trial strategy, nor make[] an assessment of counsel's competence with the benefit of hindsight." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Accordingly, defendant was not denied effective assistance of counsel when defense counsel did not move for the exclusion of Juror No. 119 from the jury.

Defendant next argues that he was denied his constitutional right to represent himself at trial. We disagree.

The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1. The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution. *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id.* at 367-368.

Apparently, a month before trial, defendant and the trial court had a discussion about defendant representing himself. We have not been provided a transcript from that proceeding. Defendant is responsible for providing us a transcript, MCR 7.210(B)(1), and we generally refuse to consider issues for which an appellant has failed to do so, *PT Today, Inc v Comm'r of Fin & Ins Servs*, 270 Mich App 110,

151-152; 715 NW2d 398 (2006). It is apparent from the record that some kind of conversation occurred, but the record does not show that defendant made an unequivocal request. Rather, it appears that defendant's attorney was, for some reason, not present that day, but defendant wished to proceed immediately. The fact that defendant apparently also requested another lawyer at the same proceeding strongly suggests that defendant had not unequivocally asserted his right to self-representation. The record simply does not provide us with a sufficient factual basis for concluding that defendant's right of self-representation was infringed.

Defendant next contends that the prosecutor committed misconduct by commenting during closing argument that the victim's testimony was uncontroverted. Defendant reasons that this was an inappropriate comment because only defendant could have contradicted her testimony, so it interfered with his right against self-incrimination. We disagree.

Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial. *People v Wilson*, 265 Mich App 386, 393; 695 NW2d 351 (2005). The constitutional privilege against self-incrimination and the right to due process restrict the use of a defendant's silence in a criminal trial. *People v Dennis*, 464 Mich 567, 573-574; 628 NW2d 502 (2001). However, the prosecutor may fairly respond to defense arguments. *People v Lawton*, 196 Mich App 341, 353-354; 492 NW2d 810 (1992). Here, defendant's theory of the case, as shown by defense counsel's opening statement and questioning throughout the case, was that the entire case rested on the victim's word alone, that her testimony could not be corroborated or otherwise proved, and that she was not worthy of belief. Defense counsel specifically stated that

the victim was "mad" at defendant and accused him of the crime because she was "a little more serious" in their relationship than he was and that she caught him seeing other women and that "angered her." The record reveals that the prosecutor's comments were proper argument, particularly in response to defendant's arguments and theory of the case that the victim's testimony was not corroborated.

Additionally, the trial court instructed the jurors that they were the sole judges of the evidence and that the attorneys' statements and arguments were not evidence. The court also instructed that the prosecution had the burden to "prove each element of the crime beyond a reasonable doubt," that defendant had "an absolute right not to testify," and that the jurors must not let the fact that defendant did not testify "[a]ffect your verdict in anyway." There is nothing in the record to even suggest that this Court should not presume that the jury followed these clear instructions. See *People v Unger*, 278 Mich App 210, 235-236; 749 NW2d 272 (2008). Finally, defense counsel's failure to object could not be ineffective assistance because counsel cannot be deemed ineffective for failing to object to comments that were proper in the context of this case. Counsel is not required to advocate a meritless position. *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005).

Finally, defendant argues that counsel was ineffective for failing to obtain casino records that would have provided impeachment and exculpatory evidence. We disagree.

Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Moreover, decisions regarding what evidence to present

and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight. *Id.* Defense counsel might very well not have wanted to show the jury hard-copy evidence that defendant, an individual who was unemployed for nearly seven months, was frequently gambling significant amounts of money. Counsel could reasonably presume that the jury, if so informed, would wonder how defendant supported such a habit. The jury could have inferred that defendant had gambled with money taken from the victim, corroborating the investigator's eyewitness testimony. Alternatively, the jury could have inferred that defendant had a strong motive to commit the crime.

Moreover, contrary to defendant's assertions on appeal, the records do not provide defendant an alibi. The casino records show that defendant was present at one casino at a time when he told the police and the victim that he was at the unemployment office, and again later on; all these instances were at times other than when the crime was committed. Records from another casino do not show defendant to have been present on the dates in question, but this evidence is dubious because if defendant had gambled cash without a member card for the casino, there would have been no record of his presence. Consequently, the records do not significantly impeach any of the prosecution's testimony or support defendant's theory of the case. We conclude that it would have been sound trial strategy for counsel to avoid seeking to admit the casino records, so we find no ineffective assistance on that basis.

Affirmed.

SHAPIRO, P.J., and SERVITTO, J., concurred with RONAYNE KRAUSE, J.