# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KCEE KINARD ODOM,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2015

No. 319307
Wayne Circuit Court
LC No. 13-003337-FH

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of third-degree fleeing and eluding, MCL 257.602a(3). Defendant was sentenced to two years' probation and we affirm.

Defendant's conviction arises from his failure to promptly stop the vehicle he was driving when Detroit Public Schools Police Department (DPSPD) officers attempted to perform a traffic stop. His sole argument on appeal is that the prosecution presented insufficient evidence to support his conviction. Specifically, defendant argues that the police officers' testimony was unreliable and there was a lack of evidence demonstrating that defendant was aware that the police were attempting to stop him or that he intended to flee from the police. We disagree.[1]

> In ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the trier of fact's verdict. [*People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011) (quotation marks and brackets omitted).]

The elements of third-degree fleeing and eluding are:

---

[1] Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).

(1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in MCL § 750.479a(3)(c); MSA 28.747(1)(3)(c). [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999) (*Grayer I*).]

To satisfy the elements of third-degree fleeing and eluding, a defendant's vehicle is not required to reach a certain speed or exceed the speed limit for a particular distance because "the statute itself does not limit fleeing and eluding to high-speed or long-distance chases." *Id*. at 741, 745.

First, the record contains sufficient evidence to allow a reasonable jury to conclude that Officers Tamika Lance and Donald Hughes were in uniform and performing their lawful duties in a car that was adequately identified as a law enforcement vehicle. Lance testified that she was wearing her Detroit Public Schools Police Department (DPSPD) uniform, which consisted of jeans, a shirt with the word "police" on it, a badge around her neck, and a "duty belt." See *People v Green*, 260 Mich App 710, 719-720; 680 NW2d 477 (2004) (noting that the statute only requires the officer to "be in uniform" and does not contain any minimum requirements for the uniform). Both officers also testified that they were performing their lawful duties at the time of the incident because state-certified DPSPD officers are authorized to make arrests and perform traffic stops in the areas between DPS schools. Finally, the testimony of Lance, Hughes, and defendant referenced the vehicle's overhead lights and markings, allowing a reasonable jury to find that the officers' car was adequately identified as a law enforcement vehicle. Although defendant's mother testified that she did not notice any lights or markings, and defendant's son testified that he did not see any lights when he looked back at the police car while he was riding in defendant's vehicle, it is the jury's responsibility to determine the weight and credibility of the witnesses' testimony. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Accordingly, when viewed in the light most favorable to the prosecution, the evidence was sufficient to allow a reasonable jury to find that the officers were lawfully performing their duties in uniform and in an adequately identified vehicle, satisfying the first element.

Second, the record clearly indicates, and defendant does not dispute, that he was driving a car at the time of the incident, satisfying the second element.

Third, there was sufficient evidence to allow a reasonable jury to find that an officer ordered defendant to stop with the use of his hand, voice, siren, or emergency lights. Hughes and Lance testified that Hughes activated the overhead lights and siren immediately after defendant rolled through a red light and turned in front of their vehicle at an intersection. The DPSPD investigator testified that defendant acknowledged that the officers had activated the

emergency lights during an interview following his arrest. However, defendant testified that the officers did not activate the overhead lights until the vehicle reached the corner of his street and did not activate the siren until the officers turned the vehicle around and stopped the vehicle near his residence. Defendant's son stated that he did not see any lights while he was riding in defendant's vehicle and did not hear a siren until defendant's vehicle reached the block of the residence. Despite the conflicting testimony as to the exact point at which the officers activated the overhead lights and siren, there is sufficient evidence in the record to support a finding that the officers ordered defendant to stop by using the vehicle's overhead lights or siren at some point before defendant stopped the vehicle, satisfying the third element.

Fourth, the prosecution presented sufficient evidence to establish that defendant was aware that the officers had ordered him to stop. Circumstantial evidence and reasonable inferences arising therefrom may provide sufficient evidence to establish the elements of a crime. *Dunigan*, 299 Mich App at 582. Lance and Hughes testified that there were no other vehicles between the DPSPD car and defendant's car when Hughes activated the lights and siren and followed defendant to his residence. Lance stated that the DPSPD vehicle was approximately three car lengths away from defendant's vehicle after Hughes activated the lights and siren. From this testimony, a reasonable jury could conclude that defendant was close enough to the DPSPD vehicle to be aware that the officers were ordering him to stop, especially because no other vehicles were present. Moreover, there was testimony that defendant exceeded the speed limit and disregarded a "stop" at 6 Mile Road and Hoover Street despite the unhindered visibility and close proximity of the DPSPD vehicle after Hughes activated the lights and siren. Further, according to the DPSPD investigator, defendant acknowledged that he did not stop when the officers activated the overhead lights. Although defendant provided contrary testimony that the officers did not activate the lights until the officers reached the block of his residence and did not activate the siren until they turned around in front of his residence, determinations regarding the weight and credibility of witness testimony are reserved for the jury. *Id.* Accordingly, there was sufficient circumstantial evidence for a rational jury to infer that defendant was aware that the officers had ordered him to stop, satisfying the fourth element.

Fifth, there was sufficient evidence to demonstrate that defendant refused to obey the order to stop by trying to flee from the police officers or otherwise avoid being caught. *Grayer I*, 235 Mich App at 741. To satisfy this element, there must be a finding that defendant had the intent to flee or avoid capture, *id.* at 741-742, and we may consider circumstantial evidence in order to determine whether a defendant possessed such an intent, *People v Grayer*, 252 Mich App 349, 356; 651 NW2d 818 (2002) (*Grayer II*). Lance and Hughes testified that, based on the speed of the police vehicle, defendant exceeded the speed limit after Hughes activated the lights and siren and did not slow down as they pursued him with the lights and siren activated. Hughes testified that defendant disregarded a "stop" at 6 Mile Road and Hoover Street during the pursuit. Contrary to the officers' testimony, defendant denied that he was fleeing and eluding the police because (1) he was not speeding when the officers followed him; (2) the officers did not activate the lights until they had reached defendant's block and did not activate the siren until after the officers drove past his house; (3) he was unaware that he had any outstanding warrants against him or that he was driving without a valid license; and (4) he approached the officers after he exited the vehicle at his residence. However, even though defendant's testimony was contrary to that of the officers, it was the jury's role to determine the credibility of the witnesses and the weight afforded to the evidence. *Dunigan*, 299 Mich App at 582. Accordingly, there was

sufficient evidence, when viewed in the light most favorable to the prosecution, to support the jury's finding that defendant intended to flee and elude the police, satisfying the fifth element.

Sixth, there was sufficient evidence that the violation took place in an area where the speed limit was 35 miles per hour or less. Lance and Hughes both testified that defendant's vehicle traveled on residential roads where the speed limit was 25 miles per hour after they had turned on the overhead lights and siren, satisfying the sixth element.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro