# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

NEIL ADAM KECKLER,

   Defendant-Appellant.

UNPUBLISHED
September 20, 2016

No. 328002
Ingham Circuit Court
LC No. 11-000674-FC

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of disseminating sexually explicit matter to a minor, MCL 722.675, and six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (victim less than 13 years of age and defendant at least 17 years of age). Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to two to three years' imprisonment for disseminating sexually explicit matter to a minor, and 30 to 60 years' imprisonment for each CSC-I conviction. We affirm.

## I. FACTS

The victim, NC, is defendant's biological daughter. The victim testified that defendant first sexually assaulted her when she was four or five years old, and the abuse continued until she was nine years old. She also testified that defendant showed her pornographic videos, once mimicking the content with her. Eventually, NC disclosed the abuse to her grandmother. A medical examination disclosed that NC's vagina was remarkably deep for a prepubertal girl and that her hymen was almost completely gone. The examining doctor explained that this was "highly suspicious physical evidence, or affirmative physical evidence that what she was saying happened." The doctor conceded that insertion of a sex toy could have caused the injuries, but explained that was highly unlikely because it would cause a lot of pain and most children would not hurt themselves to this extent.

Defendant testified and denied the charges. He admitted that he and his wife, NC's mother, kept pornographic videos in their bedroom and that he stored pornography on their digital video recorder (DVR). Defendant asserted, however, that he never allowed NC to view the pornography and that the DVR had a password protected code that only he and his wife knew. Defendant testified that NC was always a problem as a child, and her attitude and

-1-

behavior worsened in the months before the allegations surfaced. Defendant and NC's mother voluntarily relinquished their parental rights to NC. NC's mother also relinquished her parental rights to NC's half siblings, BC and MC.[1]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court erred in denying his motion for a *Ginther*[2] hearing to consider his claim that his trial counsel did not provide effective assistance. Specifically, defendant claims that his trial counsel was ineffective for failing to call BC and MC to testify at trial.[3] We disagree.

We review a trial court's decision whether to hold an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. The assertion that a defendant was denied the right to effective assistance of trial counsel raises a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The trial court's factual findings, if any, are reviewed for clear error, and its constitutional determinations are reviewed de novo. *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "When no *Ginther* hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To show that defense counsel was ineffective, a defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the defendant was prejudiced because of counsel's performance. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). A prejudice showing means that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id*. (citation omitted).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses," and a substantial defense is a defense that might have made a difference in the outcome of trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). " '[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense.' " *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted; alteration in original). "[D]ecisions regarding what evidence to present

---

[1] Defendant is not the biological father of BC or MC.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Defendant raised several other alleged instances of ineffective assistance in a motion in the trial court for a new trial or an evidentiary hearing. Those arguments were found meritless by the court and are not repeated on appeal.

and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).

Although defendant mentions both MC and BC in his brief on appeal, his argument focuses on the testimony of BC. Defendant asserts that BC would have contradicted NC's statement to the doctor who examined her that defendant had also abused BC, as well as testified that she observed NC using a sex toy. Defendant argues that this evidence would have undermined NC's credibility and provided an alternate explanation for her injuries. We first conclude that defendant failed to overcome the presumption that defense counsel's conduct constituted sound trial strategy. The only evidence in the record indicating the potential testimony of BC is her police statement. A police report regarding her interview was submitted to the trial court in response to defendant's motion for an evidentiary hearing. Some of the material in BC's statement might have been helpful to defendant. For example, BC told the police that defendant never touched her inappropriately and that she was unaware that defendant ever touched NC inappropriately.

However, other statements can be seen as unhelpful or even damaging to the defense. For example, BC stated that defendant was often drunk and that she mainly stayed in her bedroom when she was at home, indicating that she would not have had the opportunity to witness many of the incidents. Thus, defense counsel may have reasonably and strategically concluded that calling BC to testify carried more of a potential to harm defendant's cause than to benefit it. Further, counsel may have concluded that calling a child to testify could be viewed as inappropriate by the jury, or might introduce a potentially volatile and uncontrollable element into the case. Accordingly, we conclude that defendant failed to overcome the presumption that defense counsel's conduct constituted sound trial strategy.

Furthermore, defendant failed to establish that the failure to call BC deprived him of a substantial defense. BC's proffered testimony would have done nothing more than bolster the defense theory that counsel pursued at trial—that NC was fabricating the abuse. Throughout trial, counsel attempted to show that NC was not testifying truthfully because she was regularly angry at defendant for disciplining her, including grounding her for 30 days immediately preceding NC's disclosures. NC's mother and defendant testified that NC consistently exhibited poor behavior and that defendant would discipline her. NC admitted during cross-examination that defendant would discipline her and she would, as a result, get angry with him. There was also testimony presented at trial that NC wrote a letter stating that defendant did not touch her. Because BC's proffered testimony would not provide an alternative defense to present to the jury, and because there was ample evidence supporting the defense theory, the failure to call BC did not deprive defendant of a substantial defense.

Moreover, the testimony that defendant claims BC would have given was provided through other witnesses. During cross-examination, a police officer who interviewed the children testified that BC did not disclose any sexual abuse and "had a normal physical exam." In addition, NC's mother testified that she observed NC touching her private area with a sex toy. We therefore conclude that BC's testimony was cumulative and would not have affected the outcome of the trial. Therefore, defendant fails to establish that the failure to call BC as a witness deprived him of a substantial defense and that there is a reasonable probability that, but

for defense counsel's conduct, the result of the trial would have been different. We likewise conclude that because defendant failed to show that his counsel was ineffective, the trial court did not abuse its discretion in declining to hold an evidentiary hearing on the matter.

### III. SENTENCING ERROR

Defendant also argues that he is entitled to resentencing because the trial court engaged in impermissible judicial fact-finding with regard to the scoring of offense variables (OVs) 4, 10, and 11. We disagree.

Defendant claims that the trial court used impermissible judicial fact-finding to score OV 4 (psychological injury to victim), MCL 777.34, OV 10 (exploitation of a vulnerable victim), MCL 777.40, and OV 11 (criminal sexual penetration), MCL 777.41. The prosecution concedes that each of these scores was indeed subject to judicial fact-finding, but argues that because defendant was subject to a departure sentence (from both the guidelines and the applicable mandatory-minimum), the scores did not affect his sentence, and there is no Sixth Amendment violation.

Defendant's guidelines minimum sentence range was calculated at 135 to 225 months' imprisonment for his CSC-I convictions. Pursuant to MCL 750.520b(2)(b), a 25-year minimum sentence is mandated. The trial court exceeded both when it imposed a 30-year minimum sentence. Defendant did not object to his guidelines minimum sentence range based on impermissible judicial fact-finding. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Thus, the issue is unpreserved and will be reviewed for plain error affecting substantial rights. *Id*.

In *Lockridge*, 498 Mich at 364, our Supreme Court concluded that Michigan's sentencing guidelines were "constitutionally deficient" to "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." As a result, the Court "sever[ed] MCL 769.34(2) to the extent that it is mandatory and [struck] down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)." *Id*. at 391. The Court determined that the sentencing guidelines are advisory only. *Id*. at 365. Accordingly,

> [w]hen a defendant's sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury, the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so. A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. Resentencing will be required when a sentence is determined to be unreasonable. Because sentencing courts will hereafter not be bound by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion. Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a

sentence. Further, sentencing courts must justify the sentence imposed in order to facilitate appellate review. [*Id.* at 391-392 (citations omitted).]

The Court further concluded that "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure" can show "a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* at 395. The Court stated that if the sentence was imposed on or before the date of the Court's decision in *Lockridge*, a trial court must hold a hearing consistent with *United States v Crosby*, 397 F3d 103 (CA 2, 2005), to determine whether the court "would have imposed a materially different sentence but for the constitutional error." *Id.* at 397. However, the defendant in *Lockridge* was not entitled to resentencing. *Id.* at 393-394. The Court explained:

> Because he received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines (and indeed, the trial court necessarily had to state on the record its reasons for *departing* from that range), the defendant cannot show prejudice from any error in scoring the OVs in violation of *Alleyne*. [*Id.* at 394.]

The Court further explained that

> [i]n cases such as this one that involve a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a harsher sentence than allowed by the guidelines and expressed its reasons for doing so on the record. It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory. Thus, we conclude that as a matter of law, a defendant receiving a sentence that is an upward departure cannot show prejudice and therefore cannot establish plain error. [*Id.* at 395 n 31.]

In *People v Steanhouse*, 313 Mich App 1, 44-48; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016), this Court clarified that a trial court abuses its discretion in imposing a sentence if the sentence violates the principle of proportionality test as set out in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). The *Milbourn* test requires sentences " 'to be proportionate to the seriousness of the circumstances surrounding the offense and the offender,' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 636, taking " 'into account the nature of the offense and the background of the offender,' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 651.

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

"[A] sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*." *Id*. at 47-48. However, because the trial court was unaware of and not expressly bound by this reasonableness standard at the time of sentencing, the *Steanhouse* Court concluded that a *Crosby* remand was necessary. *Id*. at 48. This Court held that the *Crosby* remand procedure outlined in *Lockridge* should continue to apply. *Id*. at 48-49. A defendant may, however, choose to decline resentencing by providing prompt notice of his or her decision to the trial court. *Id*. at 48.

We first note that this case involves a departure from a statutorily-mandated 25-year minimum sentence, as opposed to a departure from a sentence within the sentencing guidelines range. However, we see no reason for treating this departure differently from the departure in *Lockridge* as both situations involve imposing a longer term of imprisonment than the defendant would have otherwise received. Accordingly, we conclude that the trial court imposed a departure sentence under the meaning of the term in *Lockridge*.

However, we conclude that remand is not required in this case. Although the trial court did not know that it was bound by the reasonableness standard articulated in *Milbourn*, its statements during sentencing encompassed this standard. The court emphasized the seriousness of the offense defendant committed against NC. The court stated that NC was "used as a receptacle" and that defendant was "a terrorist in a way." The court explained that NC was held captive in her own home and that she could "never be in peace." The court also considered factors that were inadequately considered by the guidelines when the court discussed the fact that there were numerous instances of abuse and that the OVs did not take into account the fact that the abuse occurred one or two times per week over a period of five years. In addition, the court considered the relationship between NC and defendant as father and daughter, as well as the fact that NC lost her parents because of the abuse. Finally, the court considered the extent of NC's injuries. The court concluded, "This was an extreme situation as far as not only being her father, but the number of times that this happened and the damage that it did to her." The court, therefore, considered the nature of the offense and the background of defendant when imposing a sentence that was proportionate to the seriousness of the offense and to the offender. See *Steanhouse*, 313 Mich App at 45. We conclude that the sentence constituting a five-year departure from the 25-year mandatory minimum was reasonable. Although the trial court did not explicitly mention the "principle of proportionality" or *Milbourn*, we nevertheless conclude that the trial court's sentencing decision conformed to the law as articulated in *Milbourn*. Thus, remand is not required and would constitute a waste of judicial resources.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien