# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MALCOLM BERNARD BENSON,

      Defendant-Appellant.

UNPUBLISHED
December 19, 2017

No. 333454
Wayne Circuit Court
LC No. 15-008467-01-FC

---

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree felony murder, MCL 750.316(1)(b), attempted armed robbery, MCL 750.529; MCL 750.92, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced to life without parole for the first-degree felony murder conviction, 76 months to 25 years' imprisonment for the attempted armed robbery conviction, 76 months to 25 years' imprisonment for the felon-in-possession conviction, and five years' imprisonment for the felony-firearm, second offense, conviction. Defendant appeals as of right. We affirm.

Defendant alleges that his trial attorney was ineffective because he failed to adequately cross-examine Nicole Wilson regarding her preliminary examination testimony that was inconsistent with her trial testimony about the timing of defendant's criminal conduct. We disagree.

## I. PERTINENT BACKGROUND

On September 16, 2015, William King was heading to work. He lived at the Normandie Hotel, and he usually left at about 5:10 a.m. When King left for work that morning, he encountered two individuals, defendant and another man, in front of the Normandie Hotel. King said good morning to them. The other man said good morning back, but King heard defendant say, "I'm hungry." King took defendant's statement to mean defendant was looking for money. King felt threatened by the statement. King kept on walking and did not look back after the exchange.

-1-

King subsequently ended up at the bus stop in front a fish market, which was about a block away from the Normandie Hotel. Not long had passed before Stanley Carter arrived at the bus stop. King and Carter exchanged pleasantries. King and Carter saw each other often at the bus stop. About a minute after they began talking, the two men in front of the Normandie Hotel showed up at the bus stop. King sensed something amiss behind him. He then noticed that Carter was backing up into the street in front of King with his hands raised. He heard Carter say, "I don't have no money." King then saw defendant as he moved just past where King was sitting. Defendant told Carter, "don't run." Defendant then shot and killed Carter. After Carter was shot, King took off running. King escaped unscathed. Soon after his successful escape, King reported the shooting to the police, and the police began an investigation that led to defendant.

In the course of their investigation, the police contacted Wilson because they had received information that Wilson was a witness to Carter's shooting. As it turns out, that was not Wilson's only experience with defendant in the 24 hours preceding Carter's shooting. Sometime before Carter's shooting, Wilson and defendant had engaged in an agreed upon paid sexual arrangement. After they parted ways, Wilson went to hang out near the Normandie Hotel. At about 5:00 a.m. on September 16, 2015, she saw defendant walk towards the bus stop in front of the fish market and subsequently shoot someone. At defendant's preliminary examination, Wilson indicated that she and defendant completed their sexual arrangement about 15 minutes before she observed defendant shoot the individual at the bus stop. At trial, Wilson indicated that she and defendant completed their sexual arrangement several hours before she observed defendant shoot the individual at the bus stop.

Police interviewed both King and Wilson. Both identified defendant as the shooter. The police also managed to compile a video of defendant's movements that morning from surveillance cameras near the scene of the crime. The video showed defendant walking from the Normandie Hotel to the bus stop near the fish market, and then back to the Normandie Hotel. Defendant was subsequently arrested, charged, and convicted.

## II. STANDARD OF REVIEW

Claims of ineffective assistance of trial counsel should be raised by moving for a new trial or by moving for an evidentiary hearing. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). In this case, defendant did neither. Consequently, defendant has failed to create a testimonial record to support his claim. *People v Dixon*, 217 Mich App 400, 408; 552 NW2d 663 (1996). By failing to do so, review of defendant's ineffective assistance claim is foreclosed unless the existing trial court record "contains sufficient detail to support defendant's claim." *Dixon*, 217 Mich App at 408. Thus, this Court evaluates defendant's claim of ineffective assistance of trial counsel based on the existing record. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

"The question whether [defendant's trial attorney] performed ineffectively is a mixed question of law and fact." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Questions of constitutional law arising from defendant's claim are reviewed de novo, and findings of fact relating to defendant's claim are reviewed for clear error. *Id.*

## III. ANALYSIS

Defendant was not denied the effective assistance of trial counsel when his trial attorney failed to cross-examine Wilson about Wilson's inconsistent preliminary examination and trial testimony regarding how long had elapsed between defendant's encounter with Wilson and defendant's shooting of Carter.

Claims of ineffective assistance of trial counsel are evaluated under the standard set forth in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Hoag*, 460 Mich 1, 5; 594 NW2d 57 (1999); *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994) (adopting the standard established in *Strickland* for evaluating ineffective assistance claims). "In order to obtain a new trial, [a] defendant must show that (1) [trial] counsel's performance fell below an objective standard of reasonableness and (2) but for [trial] counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Trakhtenberg*, 493 Mich at 51.

Under the deficient performance prong, a reviewing court evaluates whether the trial attorney's "acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (citation omitted). In doing so, defendant's trial attorney should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (citation omitted). Thus, in effect, defendant must overcome a "strong presumption that [trial] counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52 (citation omitted).

First, the trial attorney's performance did not fall below an objective standard of reasonableness. Defendant's claim ignores everything that his trial attorney did do during trial to discredit Wilson. Defendant's trial attorney cross-examined Wilson about the written statement she gave to police and the details of that night. More specifically, he questioned the inconsistency between the written statement saying that she was in front of Chase Bank when she saw defendant shoot Carter and her testimony at trial that she was in front of the Normandie Hotel. He pointed out that Chase Bank actually sat back a little on the street, indicating that Wilson might have had an obstructed view of defendant at the fish market. He also highlighted that somehow Wilson saw defendant with a black gun even though defendant was facing away from Wilson at the fish market. He also elicited from Wilson that there were two side streets between where she was located when she observed the shooting and the fish market, which implied that Wilson was further away than one block as she suggested earlier at trial. Defendant's trial attorney also pointed out that Wilson was wearing glasses at trial. He asked if she was wearing them that night and Wilson answered no. When asked why she needed glasses, Wilson reported that she needed her glasses "[t]o see . . . period." Defendant's trial attorney also cross-examined Wilson about how much she had to drink, and whether she had done any drugs before witnessing the shooting. He elicited information from Wilson that indicated she had done crack-cocaine sometime before she encountered defendant for the first time. On these facts, defendant has failed to meet his heavy burden of demonstrating ineffectiveness of trial counsel. Defendant's trial attorney attempted to create doubt about Wilson's credibility; he need not do so by asking every possible impeachment question in order to have rendered effective assistance to defendant.

Further, "decisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and [this Court] will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Consequently, the failure of defense counsel to introduce evidence that Wilson had given some inconsistent prior testimony will not be deemed ineffective assistance unless the "failure to present certain evidence . . . deprived defendant of a substantial defense." *Id.*

Defendant's trial attorney failed to present Wilson's prior inconsistent preliminary examination testimony that indicated that Carter's shooting took place 15 minutes after the completion of Wilson's sexual arrangement with defendant instead of several hours later as Wilson testified to at trial. However, this did not deprive defendant of a substantial defense because the core of Wilson's testimony at the preliminary examination regarding Carter's shooting largely mirrored the core of what she testified to at trial. That is, at both, she reported that, at some point after the completion of her sexual arrangement with defendant, she observed defendant walk towards the fish market, fire his gun near the bus stop, and, afterwards, walk back towards the Normandie Hotel.

During closing argument, defendant's trial attorney pointed out that Wilson's testimony about the shooting did not make much sense and that there appeared to be inconsistencies in her testimony. Consequently, the jury was aware that defense counsel was trying to challenge the reliability of Wilson's testimony regarding the shooting and rejected that challenge when it returned four guilty verdicts against defendant. In other words, defendant was not denied a substantial defense because the challenge to Wilson's reliability was presented to the jury and later rejected by the jury. Thus, defendant cannot overcome the presumption that the trial attorney's failure to cross-examine Wilson about the differing timelines was sound trial strategy.

Second, even if defendant could prove his attorney's performance was deficient, he cannot prove prejudice. In this case, Wilson's testimony primarily served to corroborate King's story. King testified that he was about 2 feet away from defendant when he walked past defendant in front of the Normandie Hotel. King heard defendant say, "I'm hungry," which caused King to take a second look at defendant. King was subsequently about 5 feet away from defendant when defendant shot Carter at the bus stop. King later identified defendant out of a photographic lineup as Carter's shooter. Further, the police were able to compile a video from surveillance cameras in the area that showed defendant move from the Normandie Hotel to the fish market, and then back to the Normandie Hotel, which helped to corroborate King's testimony. King also heard Carter say to defendant that he did not have any money, which was the only indication that defendant was trying to rob Carter.

Wilson, on the other hand, only saw defendant in the distance shoot someone. She did not testify to any facts indicating that defendant attempted to rob Carter. Nor could she have because she was not present at the bus stop. Thus, she could not hear what defendant said to Carter. Consequently, her testimony could not have been the basis for defendant's convictions for attempted armed robbery and, subsequently, the felony murder in the course of the attempted armed robbery because she could not testify to facts indicating that the elements of those crimes took place. By extension, Wilson's testimony being potentially unreliable does not diminish the reliability of King's testimony, which is what led to defendant's conviction. In the final analysis,

defendant cannot demonstrate that there was a reasonable probability that his trial attorney's failure to impeach Wilson affected the outcome because the existing record shows that Wilson's testimony was not needed to convict defendant for Carter's shooting.

In short, defendant cannot demonstrate that his trial attorney's performance was deficient, nor can he demonstrate prejudice given King's testimony. Defendant's trial attorney was not ineffective and defendant's claim is without merit.

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro