*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2020

Plaintiff-Appellee,

v

No. 349104
Wayne Circuit Court
LC No. 19-000199-01-FH

TEMIKO LYNN MCCLINTON,

Defendant-Appellant.

Before: JANSEN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession with intent to deliver 50 grams or more but less than 450 grams of Oxycodone, MCL 333.7401(2)(a)(*iii*), and possession of a controlled substance, MCL 333.7403(2)(b)(*ii*). He was sentenced to 51 months to 20 years' imprisonment for the Oxycodone conviction and 6 months to 2 years' imprisonment for the controlled substance conviction. Finding no error warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS

On May 19, 2015, Michigan State Police Trooper Jack Taeff conducted a traffic stop of a vehicle with three occupants for having an obstructed license plate. The smell of marijuana could be detected from the vehicle.[1] Trooper Taeff removed the driver from the car to conduct a pat-down search. He also called for an additional unit, and two other troopers arrived at the scene. When defendant, the backseat passenger, was removed for his pat-down search, there appeared to be two separate objects near his groin area. The troopers recovered a small bag of marijuana and two bags of prescription pills. One bag contained 165 tablets of Alprazolam (commonly known as Xanax). The other bag contained 494 blue and green Oxycodone pills. The Oxycodone pills were packaged in two separate knotted plastic sandwich bags and weighed over 50 grams. In light

---

[1] At the time of the 2015 traffic stop, the regulation of marijuana differed, but the subsequent legalization is not pertinent to this appeal.

of his over 18 years of experience, Trooper Taeff opined that even habitual users of drugs did not purchase such large quantities of drugs at one time. He further opined that consumption of six to ten Oxycodone pills would qualify as a heavy user.

The vehicle occupants were taken to a police station. Defendant did not give a formal written statement to the troopers, but purportedly told them he was merely a user. Defendant was an Ohio resident who came to Michigan to purchase the drugs, but was released pending further investigation. Apparently, a warrant was mailed to defendant, but he testified that he never received it. In November 2018, defendant was in a vehicle that was pulled over for a traffic stop in Royal Oak, Michigan. At that time, he was arrested for the outstanding warrant. At trial, defendant admitted that he purchased the large quantity of drugs, but asserted that it was merely for personal use because of his addiction. When asked about his use, defendant estimated that he consumed five to six pills a day, and the 494 Oxycodone pills would last him a couple of weeks, not a couple of months. Defendant also asserted that he was addicted to Xanax, but he did not delineate the daily amount that he consumed. Thus, defendant testified that he did not have an intent to deliver or distribute the drugs to anyone else. He testified that he attended a rehabilitation program, was in recovery for the last year, and was pursuing carpentry in trade school. On cross-examination, defendant admitted the quantity of drugs found on his person and that he did not have a valid prescription. He also acknowledged that the amount that he claimed to use in two weeks did not match the quantity found on his person. Defendant testified that the pills cost $10 each if purchased in Ohio, but only $2 or $3 each if purchased in the Detroit area.[2] He believed that he spent $1,000 to $1,500 total for all of the drugs and did not have cash on his person.

The trial court concluded that defendant was inconsistent in his testimony regarding his addiction and the amount of his consumption. Further, the court noted that defendant came from Ohio to purchase the drugs in part because of its availability and the much cheaper cost. The trial court found that the amount of Oxycodone that defendant had was far in excess for personal use and convicted him of possession with intent to deliver this drug. It also convicted defendant of simple possession of the Xanax.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant alleges that there was insufficient evidence to convict him of possession with intent to deliver Oxycodone because the trial court relied solely on personal belief that the amount exceeded personal use. We disagree.

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). This Court reviews de novo a challenge to the sufficiency of the evidence. *People v McFarlane*,

---

[2] Defendant also presented the testimony of Andre Johnson of the Detroit Recovery Project, who testified that he began providing services to defendant in December 2018. When asked to address whether a personal user would purchase or have a large quantity of drugs, Johnson testified that, "it's usually instances where you have folks who have the means and the resources and a group of peers and they want to party for the next two to three weeks." Johnson indicated that he "occasionally" found a personal user with a large amount.

325 Mich App 507, 513; 926 NW2d 339 (2018). It must determine whether, based on the evidence presented, any rational trier of fact could have found guilt beyond a reasonable doubt for each element of the crime charged, and "must resolve all conflicts in the evidence in favor of the prosecution." *Id.* When reviewing a challenge to the sufficiency of the evidence, the appellate court does not interfere with the trier of fact's assessment of the weight and credibility of the witnesses or the evidence. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

To establish the elements of possession with intent to deliver more than 50 but less than 450 grams of Oxycodone, the prosecutor must prove: (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was Oxycodone and the defendant knew it was Oxycodone; and (4) the substance was in a mixture that weighed between 50 and 450 grams. *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998); see also M Crim JI 12.3.

Defendant submits that the trial court improperly found the intent to deliver premised solely on the quantity of pills. Possession with intent to deliver may be established by circumstantial evidence and reasonable inferences arising from that evidence. *People v McGhee*, 268 Mich App 600, 623; 709 NW2d 595 (2005). In the context of determining intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Actual delivery is not required to establish the intent to deliver. Rather, "intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992).

In the present case, Trooper Taeff testified that defendant was the rear passenger in a vehicle pulled over for a traffic stop. Once defendant was removed from the vehicle for a pat-down search, he appeared to have packages in his groin area. The troopers recovered bags containing marijuana, Xanax, and 494 Oxycodone pills. Trooper Taeff testified that, in light of his over 18 years of experience, the quantity of Oxycodone involved did not demonstrate personal use, but an intent to deliver or distribute the drug. On the contrary, defendant testified that the drugs were only for personal use because of his addiction. He estimated that he consumed five to six pills a day, and the supply on his person would last only two weeks. However, a mathematical comparison of defendant's daily use in light of the quantity found on his person indicated a supply of at least two months. Defendant also testified that the drug cost $10 per pill if purchased in Ohio, but $2 or $3 per pill in the Detroit area. Defendant's counselor Johnson testified that the quantity of drugs "occasionally" would be found on a personal user.

Contrary to defendant's assertion, the trial judge did not rely merely on the quantity recovered and his own personal experience. The evidence at trial revealed that defendant was found with a substantial amount of Oxycodone pills hidden in his groin for which he did not have a valid prescription. The trooper testified that generally a large quantity of the drug did not reflect personal use, but an intent to deliver. Further, defendant admitted that he came to the Detroit area to purchase the drug because of the price difference. As noted by the prosecutor, defendant had an incentive to purchase Oxycodone in Detroit at $2 or $3 per pill and resale of the drug in Ohio at $10 per pill would result in a substantial profit. Additionally, defendant's counselor testified that the large quantity of Oxycodone only "occasionally" reflected personal use.

In light of the 494 Oxycodone pills recovered, the pills were not individually packaged, and the substantial difference between the purchase price in the Detroit area and Ohio, this evidence, when viewed in the light most favorable to the prosecutor, was sufficient to establish the intent to deliver. A rational trier of fact could find beyond a reasonable doubt that defendant had the intent to deliver the Oxycodone, and accordingly, defendant has not established that the evidence was insufficient to support his conviction of possession with intent to deliver.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron