*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KRISTA NICOLE GLADNEY,

Defendant-Appellant.

UNPUBLISHED
February 19, 2019

No. 340198
Wayne Circuit Court
LC No. 17-003639-01-FC

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without parole for the murder conviction, 76 months to 20 years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right, and for the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions result from the fatal shooting of her "off and on" boyfriend of five years, William Marshall. The decedent's body was discovered on the porch steps of his home. When police arrived at the decedent's home, they discovered that the decedent had been shot three times. According to the decedent's neighbor, defendant was standing over the decedent while he was lying on his steps, when the neighbor's son approached defendant. After the son of decedent's neighbor began trying to make inquiries into what defendant was doing, defendant got into the decedent's car and left the scene. At that time, according to the decedent's neighbor, the decedent was lying on his porch steps and did not appear to be moving. When the neighbor and her son checked on the decedent after defendant left, the decedent did not appear to be alive. The police recovered shell casings from near the front entrance of the door on the decedent's porch, on the living room floor, and near the foot of the bed in the bedroom. A pillow in the bedroom contained black markings and a suspected impact point from a bullet. The police

arrested defendant outside her apartment later that day, while she was in the process of moving boxes from her apartment to the decedent's car. Defendant gave an incorrect name and falsely told the police that the decedent was inside her apartment. A firearm and the decedent's phone and driver's license were recovered from inside the vehicle. During questioning by the police, defendant did not claim that she shot the decedent in self-defense.

However, at trial, defendant argued that when she shot and killed decedent, she did so in self-defense. Defendant testified that she and the decedent had a volatile relationship. Defendant claimed that she had moved to Ann Arbor because defendant was stalking her and her current boyfriend. She admitted, however, that she had invited the decedent to her Ann Arbor apartment on the day of the offense. Defendant also testified that she and the decedent had voluntarily returned to the decedent's Detroit home where she prepared some home-cooked meals for him, that they planned to spend time together at Thanksgiving, and that she still considered the decedent a friend. According to defendant, she was outside the decedent's home when the decedent came out of the house, talking on his phone. The decedent refused to tell defendant who he was speaking to and defendant tried to grab the phone from him multiple times. While struggling over the phone, a gun fell from the decedent's clothing, onto the porch. The decedent reached for the gun, but defendant grabbed it first and shot the decedent. Defendant testified that she saw the neighbor's son come out of his house, causing her to become scared, so she got into the decedent's car and drove away. Defendant claimed that the decedent was seated on his front porch when she left, and she was unaware he had been shot.

The trial court's jury instructions included an instruction on self-defense, but, as previously indicated, the jury found defendant guilty of first-degree premeditated murder, felon in possession of a firearm, and felony-firearm. Defendant was sentenced as indicated, and this appeal then ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues on appeal that her trial counsel was ineffective for failing to call witnesses who could have testified regarding a history of domestic violence by the decedent. Defendant did not raise this claim in the trial court and this Court denied defendant's motion to remand, hence, our review of this issue is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish ineffective assistance of counsel, defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Defendant has the burden of establishing the factual predicate for her claim. *Id.*

Decisions regarding whether to call certain witnesses and to present specific evidence generally constitute matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). We will not second-guess counsel on matters of trial strategy. *Id.* The failure to call witnesses will not constitute ineffective assistance unless it deprives the defendant

of a substantial defense. *Id*. A substantial defense is one that could have made a different in the trial's outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Although defendant asserts that counsel was ineffective for failing to call *three* witnesses, she identifies only *two* witnesses in her brief—her father and her aunt. Although defendant submitted the affidavits of her father and aunt, we note that neither is premised on personal knowledge. Our court rules require that an affidavit must be premised on personal knowledge, must state with particularity facts admissible as evidence, and must show that the affiant, if sworn as a witness, could testify competently to the facts stated in the affidavit. MCR 2.119(B); MCR 1.103. Additionally, the document must be signed. MCR 1.109(E). The affidavit submitted by defendant's father is unsigned and states as follows:

> 1. I am [defendant's] father. I witnessed [defendant] complain she was beat up by [the decedent] and hit in her face with a closed fist.
>
> 2. Over the years, [the decedent] was domestically abusive to [defendant].

The affidavit submitted by defendant's aunt is also unsigned and states:

> 1. I am [defendant's] aunt. I witnessed [defendant] Gladney complain she was beat up by [the decedent] two times.
>
> 2. Over the years, [the decedent] was domestically abusive to [defendant].

As previously pointed out, it is readily apparent that the affidavits are not premised on personal knowledge. Rather, the affidavits are based on defendant's hearsay statements that defendant was assaulted by the decedent at some unspecified time in the past. Neither witness claimed to have personally observed the decedent's alleged acts of domestic violence. Moreover, neither witness claimed to have knowledge of specific facts related to the charged offense, or events in proximity to the offense. While the affidavits seemingly aver that defendant was domestically abused by the decedent "over the years," they do not identify any particular time period in proximity to the shooting to support defendant's claim of an imminent fear of harm from the decedent at the time of the offense. In sum, the affidavits fail to contain specific facts to support that conclusion. Hence, defendant has failed to establish the factual predicate for her claim that trial counsel's failure to call these witnesses deprived her of a substantial defense. *Anderson*, 322 Mich App at 628. Accordingly, defendant is not entitled to relief on this issue.

### III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support her convictions. She alternatively argues that she should receive a new trial because her convictions are against the great weight of the evidence. Neither argument is supported by the record evidence submitted at trial.

A challenge to the sufficiency of the evidence is reviewed de novo by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court will not

interfere with the trier of fact's role of determining the credibility of the witnesses. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). All conflicts in the evidence must be resolved in favor of the prosecution and circumstantial evidence and reasonable inferences arising therefrom may be sufficient to satisfy the elements of a crime. *Id*. at 180-181. When intent is at issue, the trier of fact can infer intent from the defendant's words or actions, or from the means or the manner employed to commit the offense. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

A challenge to the great weight of the evidence is generally reviewed to determine whether the evidences preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Cameron*, 291 Mich App 599, 616; 806 NW2d 371 (2011). But because defendant did not preserve this great-weight claim by raising the issue in a motion for a new trial in the trial court, she must demonstrate a plain error affecting her substantial rights. *Id*. at 617-618.

The elements of first-degree premeditated murder are the intentional killing of a human being with premeditation and deliberation. *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009); MCL 750.316(1)(a). Premeditate means to think about beforehand, and deliberate means to measure and evaluate the major aspects of a choice or problem. *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). Generally, premeditation and deliberation may be established by an interval of time between homicidal thought and action to afford a reasonable person time to take a second look, and it may be a brief moment of thought or a matter of seconds. But the determination presents an issue for resolution by the trier of fact. *Id*. at 241-243. The necessary state of mind may be inferred by defendant's conduct in light of the circumstances. *Id*. at 243-244.

The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Goree*, 296 Mich App 293, 302; 819 NW2d 82 (2012). Pursuant to MCL 750.224f(2), a convicted felon cannot directly or constructively possess a firearm until the statutory criteria are satisfied. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012).

When a defendant raises a claim of self-defense, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). To claim self-defense, defendant must have honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death, great bodily harm, or a sexual assault. MCL 780.972(1); *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). The credibility of a defendant's testimony in support of self-defense is an issue for the jury, and the jury is free to disbelieve the defendant's testimony, particularly in light of the circumstances. *Stevens*, 306 Mich App at 630-631. Self-defense may apply to the possessory offenses of felon in possession of a firearm and felony-firearm. *Goree*, 296 Mich App at 303-305.

Our review of the record evidence leads us to conclude that there was sufficient evidence to support defendant's first-degree murder and firearm convictions, and to rebut defendant's claim of self-defense beyond a reasonable doubt. Although defendant claimed that she shot the victim during a struggle on the porch of the decedent's home, physical evidence found at the

scene supported a different set of facts than those put forward by defendant. Police discovered and testified to evidence that there was a shooting inside the decedent's home that continued outside. This police testimony was based on casings were found in the bedroom, the living room, and on the porch. A suspected impact mark was also observed on a pillow in the bedroom. Police testified that the decedent had been shot three times. This evidence supported a logical inference that defendant shot the decedent inside the house and continued to pursue him and shoot him while pursuing him outside, negating defendant's testimony regarding how she came into possession of the gun, and her claim of self-defense. Additionally, after the shooting, the decedent was observed by a neighbor lying on the porch stairs, with defendant standing over him. Defendant appeared to be looking for something on the decedent's body, she falsely remarked that the decedent merely suffered an asthma attack, and then fled the scene in the decedent's vehicle. The jury could have found from these facts that defendant's claim of self-defense was not credible.

Even if the jury credited defendant's testimony that the decedent dropped the gun during a struggle, and she grabbed it first, defendant admitted that the decedent only had the gun on his person and did not draw it or use it during the struggle. Furthermore, defendant admitted she was some distance away from the decedent when she shot him. Based on these factors, it is clear that the jury reasonably found, based on legally sufficient evidence, that defendant did not have an honest and reasonable belief that the decedent presented a threat of imminent death or great bodily harm.

Additional evidence also refuted the credibility of defendant's claim of self-defense. Defendant claimed that she had a volatile "off and on" relationship with the decedent for five years, and that the decedent's stalking of defendant and her then-boyfriend caused her to move to Ann Arbor. Defendant acknowledged, however, that she was relying on the decedent to help her financially with a move, considered him to be a friend, and planned on spending the Thanksgiving holiday with him. Defendant testified that she was preparing meals for the decedent when she heard a "pop" noise, but she did not identify the sound as a gunshot. Moreover, defendant never claimed that the decedent threatened her with a gun and she admitted that when she allegedly felt uneasy about being at the decedent's house, the decedent allowed her to drive his car to a friend's house. In addition, the testimony of defendant's neighbor refuted defendant's testimony that she left in a hurry because the neighbor's son came out of the house and began approaching defendant, as well as defendant's testimony that the decedent was sitting on the porch steps and did not appear to have been seriously injured when defendant left in the decedent's car. When the police caught defendant at her apartment and later took her into custody, she gave an incorrect name, lied about the decedent being at her apartment, and never suggested that the shooting was justified by self-defense. Viewed in the light most favorable to the prosecution, the evidence presented at trial was legally sufficient to enable the jury to find beyond a reasonable doubt that defendant acted with premeditation and deliberation when she shot the decedent, and that her actions were not justified by self-defense. *Meissner*, 294 Mich App at 452.

Next, defendant argues that her convictions are against the great weight of the evidence. Defendant's claim lacks merit. The jury was presented with diametrically opposed versions of events, and defendant's version was self-serving and contrary to physical evidence observed by the neighbor and discovered by the police. The evidence offered by the prosecutor indicated that

defendant obtained a gun, pursued the decedent with the gun and shot the decedent multiple times. After she had fatally wounded the decedent, eyewitness testimony revealed that defendant searched the decedent then fled the scene. When initially questioned by police, defendant lied about the whereabouts of the decedent and failed to tell officers that she had acted in self-defense. Review of the record in this matter leads us to conclude that the evidence does not preponderate so heavily against the verdict such that the evidence constitutes a miscarriage of justice. *Cameron*, 291 Mich at 616. Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford