*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AJ and SJ, Minors.

UNPUBLISHED
August 15, 2024

No. 369820
Newaygo Circuit Court
Family Division
LC No. 23-009885-NA

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor children, AJ and SJ. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In early 2023, Jason Thompson, a Children's Protective Services ("CPS") investigator from petitioner Department of Health and Human Services ("DHHS"), was assigned to investigate respondent after complaints were received that she was allowing her boyfriend, a man named Morgan John Auw, to have contact with AJ and SJ. Auw had previously been adjudicated on three instances of sexually abusing other minor children. Respondent was notified of DHHS's concerns and affirmed that she was aware of Auw's past. In February 2023, Thompson created a "verbal safety plan" with respondent and notified her that she would be held responsible if something were to happen to the children. In late March 2023, Thompson met with respondent again, and they created a new, written safety plan that stated that Auw was not to be left alone with the children.

In October 2023, AJ disclosed to a friend that Auw was sexually abusing her. Detective Kevin Kolk of the Fremont Police Department testified that respondent went to the police department "right away" to report the sexual abuse, and AJ told him that Auw had sexually assaulted her five separate times and that the assaults usually occurred at night when respondent would allow Auw to get into bed with the children to help them fall asleep while she went outside to smoke and use her phone. Shortly after the disclosure, DHHS petitioned the trial court to take jurisdiction over the children and issue an order suspending respondent's parenting time. At a preliminary hearing, the trial court heard testimony that DHHS made reasonable efforts to prevent removal of the children by implementing a safety plan in March 2023. DHHS explained that

respondent did not follow the safety plan concerning Auw and, therefore, it was contrary to the welfare of the children to allow them to remain in the home. The trial court authorized the petition, denied respondent's request for parenting time, and placed the children with their paternal aunt and uncle.

In December 2023, the trial court began trial to determine whether to terminate respondent's parental rights. DHHS stated that termination was in the best interests of the children because respondent had received "sufficient warning" and still failed to protect AJ. The trial court subsequently issued an opinion and order terminating respondent's parental rights under MCL 712A.19b(3)(b)(*ii*) (parent failed to protect) and (j) (reasonable likelihood that child will be harmed if returned to parent). In the opinion, the trial court found that respondent had the opportunity to prevent the sexual abuse but failed to do so. The trial court noted that respondent knew about Auw's history of sexual abuse and that DHHS was concerned about her children's safety. The trial court concluded, therefore, that "there is a reasonable likelihood that the [children] would likely be reinjured or abused in the foreseeable future if returned to the parent." The trial court noted that "[t]he court recognizes that the actual abuse was perpetrated on [AJ], not [SJ]," but the court stated that "[t]reatment of one child is probative of how a parent may treat other children." For those same reasons, the trial court found that termination was in the children's best interests, and this appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error both the trial court's decision that at least one statutory ground for termination has been proven as well as the court's decision regarding the minor child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022) (quotation marks and citation omitted).

## III. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred when it found that termination was proper under MCL 712A.19b(3)(b)(*ii*) because she was unaware of Auw's likelihood to sexually abuse her children. When she was made aware that Auw had sexually assaulted AJ, she reported it to the police immediately. Thus, respondent asserts that there was not clear and convincing evidence presented at trial to demonstrate that she actually failed to protect her children. We disagree.

-2-

Termination of parental rights is proper under MCL 712A.19b(3)(b)(*ii*) when "the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *In re LaFrance*, 306 Mich App at 725. The statute does not require "that there be clear and convincing evidence that the children were at risk of harm from the same abuser," but rather, "addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse." *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015).

Contrary to respondent's argument, there was clear and convincing evidence to support the trial court's findings. The court heard testimony that after CPS received a complaint that respondent was allowing Auw to have contact with the children, Thompson notified respondent of the concerns that DHHS had with Auw's history of sexual abuse. In contradiction to respondent's assertion on appeal, Thompson testified that respondent affirmed that she was aware of Auw's past and that respondent was notified that she would be held responsible if Auw were to harm the children. Despite these early warnings, respondent continued to allow Auw to be alone with the children. A month later, Thompson and respondent created a *written* safety plan together that stated that Auw was not allowed to be alone with the children. However, a few months after the safety plan was created, respondent allowed Auw to get into bed with the children while she was not present. Although respondent purportedly reported AJ's disclosure of sexual abuse immediately to law enforcement, the fact that she left her children alone with Auw in the first place in direct violation of the written safety plan demonstrated that respondent was either unable or unwilling to protect either of her children from potential abuse. See *In re Gonzales/Martinez*, 310 Mich App at 432; see also *In re Archer*, 277 Mich App 71, 75; 744 NW2d 1 (2007) (stating that termination of the respondent's parental rights under MCL 712A.19b(3)(b)(*ii*) was justified because she "associated with known sex offenders, allowed them to have contact with the children, and even allowed a known sex offender to reside in her home").

Therefore, the trial court did not clearly err when it found that termination of respondent's parental rights was proper under MCL 712A.19b(3)(b)(*ii*) and, because at least one ground for termination existed, we do not need to consider the additional grounds upon which the trial court based its decision.[1] See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## IV. BEST INTERESTS

Respondent next argues that the trial court clearly erred when it concluded that termination was in the children's best interests because the trial court did not consider the children's bond to respondent or her parenting abilities. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

---

[1] In addition, respondent contends on appeal that the trial court clearly erred when it terminated her parental rights under MCL 712A.19b(3)(b)(*i*). Our review of the record, however, shows that the trial court did not base its decision under that subsection. Accordingly, the argument is moot and we will not entertain it. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) ("A moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights.").

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5); see also *In re Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the children's interests rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "The trial court should weigh all the evidence available to determine the child's best interests." *Id*. at 713.

In *In re VanDalen*, 293 Mich App at 122-123, DHHS filed a petition requesting the removal of the minor child from the home after the child was admitted to the hospital with injuries indicative of physical abuse. The mother told DHHS that the father was responsible for the abuse and that she never trusted the father alone with the child. *Id*. at 123-124. The parents later separated, and the mother expressed her desire that the father not be left alone with the minor child. *Id*. at 124. However, the parents later reunited and had a second child, who also displayed injuries indicative of physical and sexual abuse. *Id*. at 126. Both parents' parental rights were subsequently terminated. *Id*. at 131. Affirming the trial court's order, this Court stated:

> Given that the children's safety and well-being could not reasonably be assured in light of the past severe abuse of the children while in respondents' care, which remain unresolved, and that the children were thriving in the care of their foster parents, the court did not clearly err by finding that termination of the respondents' parental rights was in the children's best interests. [*Id*. at 142.]

Similarly here, the evidence clearly demonstrated that the children's future safety and well-being could no longer be reasonably assured in light of the fact that despite full knowledge of the danger posed to the children, respondent left them alone in their beds with Auw. See *id*. We agree, therefore, with the trial court's conclusion that "[b]oth children are at risk and if returned to their mother's home there would be substantial risk of harm found." At the interview with the sexual assault nurse examiner, which took place shortly after AJ's disclosure, the nurse asked AJ "if she felt safe with mom," and AJ responded "[Y]es, she will keep me safe." Respondent contends that this statement was indicative of a "bond" that the trial court did not consider in determining the children's best interests. This argument is not persuasive because although there may have been a bond demonstrated between AJ and respondent, the trial court was required to weigh all the evidence available to determine the children's best interests. See *In re White*, 303 Mich App at 713. The trial court found that the majority of the evidence demonstrated that respondent failed to protect the children from Auw and that the children were at a substantial risk of harm if returned to respondent's care and custody. Therefore, the trial court did not err by finding that termination was in the minor children's best interests. See *In re VanDalen*, 293 Mich App at 142.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, respondent argues that her trial counsel was ineffective by failing to present testimony at trial to show that she was generally a competent parent to her children despite allowing Auw into their lives, and that this ineffective assistance prejudiced her defense. We disagree.

The "principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Therefore, "it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Id*.

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). But even assuming that trial counsel's decision not to present any testimony or other evidence was objectively unreasonable, the record does not support respondent's contention that trial counsel's error prejudiced her defense. It was evident from Thompson's testimony that respondent knew about Auw's history of sexual abuse, was sufficiently warned of the consequences, and yet still allowed Auw to be alone with her children, including in their beds. Therefore, even if trial counsel had presented testimony about respondent's parenting abilities or her relationship with her children, a different result was not reasonably probable. See *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Therefore, respondent was not denied her right to the effective assistance of counsel.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young