*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BRIAN SCOTT HALL,

      Defendant-Appellant.

UNPUBLISHED
August 22, 2019

No. 342010
St. Clair Circuit Court
LC No. 17-001373-FH

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

A jury concluded that defendant committed breaking and entering by breaking a window and damaging the bottom of the entry door to a garage. Because the prosecutor failed to present sufficient evidence to allow a reasonable jury to conclude beyond a reasonable doubt that part of defendant's body entered the garage when he attempted—but failed—to break through the entry door, we vacate defendant's conviction and sentence for breaking and entering. We conclude that defense counsel did not render ineffective assistance of counsel and that no cumulative error occurred. Therefore, we affirm defendant's remaining convictions. We vacate defendant's remaining sentences and remand for resentencing in light of this opinion.

## I. BACKGROUND

This case arises from two attempts to break into a garage. One attempt was discovered on the morning of April 26, 2017, between 8:00 a.m. and 8:30 a.m., and the second attempt occurred on April 27, 2017, around midnight.

James Randolph[1] testified that he and his wife Marilyn lived on Henry Street in Port Huron Township and that they also owned the neighboring house. Although James's mother

---

[1] Because the prosecutor presented the testimony of both James and Marilyn Randolph, we will refer to these witnesses by their first names.

-1-

previously lived in that neighboring house, it was vacant on the dates in question. James stored a log splitter in the garage at the vacant house. To secure the garage from intruders, James had previously screwed a board to the entry door, in an attempt to prevent the door from being opened.

On April 26, 2017, between approximately 8:00 and 8:30 a.m., James and Marilyn discovered that the entry door to the garage had been forced open and the board used to secure the door was lying on the ground outside the garage. They noted that the log splitter had been moved to a position near the garage door, leading them to conclude that intruders had unsuccessfully attempted to remove it from the garage. James moved the log splitter to a different location, and then he installed a piece of plywood over the entry door and screwed two boards to the entry door to hold the plywood in place. They also checked the vacant house and verified that the doors to the house were shut and locked; they determined that nothing had been disturbed at the house.

At approximately midnight that night, James and Marilyn were roused from bed when Marilyn heard a loud bang. Marilyn looked out the window and saw a tall, thin person wearing dark clothing in the driveway of the vacant house. Marilyn continued to watch, and she saw two people running when a motion-activated security light came on at the vacant house. Marilyn observed that one of the individuals was wearing khaki shorts, and the other individual was a tall, thin person wearing dark clothing. James called police, who arrived within five or ten minutes of his call.

St. Clair County Sheriff's Deputy Nicholas Singleton responded to the breaking-and-entering call just after midnight on April 27. Deputy Singleton met James and walked toward the garage at the vacant house, where he observed a shadow moving near the garage and then observed two subjects running through the ditch and over Henry Street. Deputy Singleton gave chase, and additional police officers apprehended defendant as he ran past a neighboring church. The police were unable to locate the second suspect, despite the use of a tracking dog. Deputy Singleton located a shoe embedded in the mud in the ditch through which the suspects ran. When defendant was booked into the jail, he was missing a shoe, and the shoe located in the ditch matched the other shoe that defendant was wearing. In addition, police observed defendant discard a pair of gloves and a flashlight as he was apprehended. Deputy Singleton interviewed defendant, who claimed that he was in the area of the vacant house because he was headed to visit his children. Yet, defendant did not know the address where his children lived, and the location where he was arrested was not between the starting and ending locations that he described. Police asked defendant who was with him, because witnesses observed two people running from the scene. Defendant denied that another person was present.

After police apprehended defendant, Deputy Singleton returned to the crime scene and, along with James, investigated the vacant house and its garage. The deputy took photographs of the entry door to the garage, and he described those photographs as depicting a hole "where the bottom boards were removed from the door," as the perpetrators attempted to enter the garage. James likewise testified that the entry door was damaged in two respects: "the bottom of the entry door was broke off, and the glass was broke out of the entry door." James concluded that the perpetrators broke the bottom of the entry door by kicking it. James did not notice anything missing from inside the garage, and the boards James had screwed to the plywood over the entry

door remained in place. Notably, it was clear from the witness testimony that the perpetrators never actually opened the entry door to the garage, but only broke portions of the door in an attempt to gain entry.

After investigating the garage, James and Marilyn also investigated the vacant house. They discovered that the entry door to the house was open and its deadbolt lock was broken. They noticed pry marks on the entry door to the house, and found a pry bar inside the bedroom. The medicine cabinet was open, the window shades were pulled down, a plant had been knocked over, and another door had been unlocked. Deputy Singleton confirmed that the entry door to the vacant house had been forced open with a pry bar.

The prosecutor charged defendant, as a fourth-offense habitual offender, MCL 769.12, with second-degree home invasion, MCL 750.110a(3); assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); breaking and entering a building with intent to commit larceny, MCL 750.110; and possession of burglar's tools, MCL 750.116.

During his opening statement at trial, defense counsel conceded that defendant had some level of involvement in the crime, but predicted that the prosecutor would be unable to prove that defendant actually entered the garage. Defense counsel stated, "[A]t the conclusion of the case you're all going to say I'm sure this guy was probably involved in the crime." Defense counsel then went on to state, however, that "the problem is [sic] so far as the prosecution is concerned that they're not going to prove entry."

In his closing argument, defense counsel again alluded to defendant's potential involvement in the crime, but argued that the prosecutor could not prove the charges against defendant beyond a reasonable doubt because those charges were based on probabilities. Defense counsel argued:

> When I did my opening statement I told you right then you were going to be presented with a case where you were going to go back to the jury room and said [sic], yes, the guy was probably involved with this. But the case would never be able to, the prosecution would never be able to move the case beyond that he probably was involved to the standard of guilty beyond a reasonable doubt. And that's what you just now heard on this closing is you're being asked to assume fact after fact after fact based on probability.
>
> The prosecution wants you to assume that he was there the night before and there's been no evidence presented that he was there the night before on the 26th when the garage was broken into the first time. They want you to assume that he had a partner. What evidence at all did you hear about anything about people working in concert? People working together? Two people? All you heard was deputy saw two people run across the road. And I specifically asked him did the one help the other, were they doing anything? No, they ran across the road and I lost sight of them.

* * *

-3-

One thing I want to stress is I know that at least one person's going to go back to that jury room and they're going to get what this probability theory is. They're going to say, gee, look at this evidence, I mean it can't be just coincidence that he was there, he probably was involved. And all I can say to you is, or the other members or the jury that are not going to buy this theory that if you just assume guilt, the issue really involved here is bigger than just [defendant]'s guilt in this case. If we get on the slippery slope when we're able to let the police and the prosecution to bring somebody to trial based on probabilities, doesn't that undermine our whole justice system?

If you can bring somebody to court and you can say to a jury we don't really have to prove that he pried a thing, we just want you to assume that he did because he was there, because he ran away, because he acted guilty, aren't we just a step away from you arresting [sic] basically incarcerating people on suspicion. That's what I'm asking you. Look at the facts, and when you look at the facts what do they prove? They prove suspicion and a probability of guilt. But they don't go beyond that threshold of proving beyond a reasonable doubt. And that's what I'm asking you to return a verdict on all these Counts of not guilty. Thank you.

The jury convicted defendant as charged. The trial court sentenced defendant to 6 to 20 years in prison for his home-invasion conviction, 235 days in jail for his assaulting, resisting, or obstructing a police officer conviction, 3 to 15 years in prison for his breaking-and-entering conviction, and 3 to 15 years in prison for his possession of burglar's tools conviction, to be served concurrently.

Defendant appeals as of right from his convictions and sentences.

## I. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor presented insufficient evidence that he committed the crime of breaking and entering the garage with intent to commit larceny. Specifically, defendant contends that "the record is devoid of any evidence that [he] or anyone else entered the garage at the vacant house on the evening in question. Rather, the evidence at trial established that the perpetrators attempted to gain entry, but were not successful." Defendant asserts that the entry door to the garage was "damaged but not breached, nothing was moved, nothing was stolen, and there was no evidence—direct or circumstantial—that any portion of [defendant]'s body entered the building."

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up). The crime of breaking and entering with intent to commit larceny is defined in MCL 750.110(1), which provides: "A person who breaks and enters, with intent to commit a felony or a larceny therein,

a . . . building [or] structure . . . is guilty of a felony punishable by imprisonment for not more than 10 years." The elements of the offense of breaking and entering with intent to commit larceny are: "(1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein." *People v Toole*, 227 Mich App 656, 658; 576 NW2d 441 (1998). Defendant only challenges the second element, whether he entered the garage.

To constitute an entry into a structure, "it is sufficient if any part of defendant's body is introduced within" the structure. *People v Gillman*, 66 Mich App 419, 429-430; 239 NW2d 396 (1976), quoting 3 Gillespie, Michigan Criminal Law & Procedure (2d ed.), § 1133, p 1528. "Thus, if a defendant were to stick his arm through a window, this would constitute an entry. Similarly, if a defendant were to stick his arm through a space between two bars, this would constitute an entry." *Id*. at 430. In this case, the trial court properly instructed the jury that "[i]t does not matter whether the defendant's entire body was inside. If he put any part of his body into the building that is enough to count as an entry." Defendant raises no argument that this instruction was an incorrect statement of the law.

We conclude that the evidence, even when viewed in the light most favorable to the prosecution, was insufficient to justify a rational jury in finding, beyond a reasonable doubt, that defendant "entered" the garage. The witnesses testified that boards at the bottom of the entry door had been damaged and that a glass window pane had been broken, sufficient to allow the perpetrators to look inside the garage. Yet, it is clear that defendant never actually opened the entry door to the garage, and the prosecutor presented no evidence that any portion of defendant's body entered the garage through the broken portions of the door. The witnesses confirmed that James had screwed two boards to the door to prevent it from being opened, and that the boards were still in place after the April 27 incident. Because the evidence presented in this case was insufficient to allow a reasonable jury to conclude beyond a reasonable doubt that defendant "entered" the garage, we vacate defendant's conviction and sentence for breaking and entering with intent to commit larceny. Given this conclusion, we need not address defendant's arguments regarding prosecutorial error and jury instructions, which relate only to the breaking-and-entering conviction.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel rendered ineffective assistance because counsel essentially conceded defendant's involvement in the crimes. Defendant argues that counsel pursued an unreasonable trial strategy that established defendant's guilt and contradicted a "mere presence" defense. Defendant also argues that defense counsel's failure to request a "mere presence" instruction was deficient and prejudicial because it was the only applicable defense to the crimes charged.

Defendant did not move for a new trial or for a *Ginther* hearing in the trial court. Therefore, this Court's "review is limited to mistakes apparent on the record." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To prove ineffective assistance of counsel, and thereby obtain a new trial, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493

Mich 38, 51; 826 NW2d 136 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "Failing to request a particular jury instruction can be a matter of trial strategy. Trial counsel has wide discretion in matters of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013) (cleaned up).

Defendant cites several of defense counsel's "concessions," including the portion of his opening statement during which defense counsel stated, "[A]t the conclusion of the case you're all going to say I'm sure this guy was probably involved in the crime." Yet, defendant did not cite the following sentence where defense counsel stated, "But what, the problem is so far as the prosecution is concerned that they're not going to prove entry." Defendant also cites defense counsel's closing argument where he stated, "I told you right then [during opening statements] you were going to be presented with a case where you were going back to the jury room and said [sic], yes, the guy was probably involved with this." Yet, defendant did not cite the rest of defense counsel's argument that the prosecutor did not prove the elements of the charged offenses beyond a reasonable doubt.

Contrary to defendant's argument that defense counsel's "admissions effectively proved [defendant]'s guilt as an aider and abettor to home invasion," defense counsel did not concede that defendant committed the charged crimes. Defense counsel only acknowledged that the jury might conclude that defendant was "probably" involved in some manner. This was a reasonable conclusion because defendant was arrested after running away from the scene of the crime, lost his shoe in a ditch near the vacant house, and discarded gloves and a flashlight as Deputy Singleton chased him. Still, defense counsel argued that the prosecutor would not prove beyond a reasonable doubt that defendant committed the charged crimes. Defense counsel's trial strategy was to acknowledge the shortcomings of the case, but argue that the evidence was insufficient to convict defendant. "[T]his Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Additionally, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Id*. at 61. Defense counsel's performance did not fall below an objective standard of reasonableness because he pursued a sound trial strategy. See *Trakhtenberg*, 493 Mich at 52.

Defendant next argues that his trial counsel rendered ineffective assistance because counsel failed to request a "mere presence" instruction. A defendant's "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). "Mere presence" implies "not only an absence of criminal intent but also passivity and nonparticipation in the actual commission of [the] crime." *People v Moldenhauer*, 210 Mich App 158, 160; 533 NW2d 9 (1995).

Defendant has not overcome the presumption that defense counsel's decisions regarding the jury instructions were a matter of sound trial strategy. The "mere presence" instruction, which assumes that defendant was present while others committed the charged offenses, would have contradicted defendant's alibi that he was only in the neighborhood because he was going

to visit his children, and his statement to police that no one was with him at the scene. Accordingly, a "mere presence" instruction was inapplicable to the facts of this case, and defense counsel was not ineffective for failing to request it.

Defendant has not established that trial counsel's decisions fell below an objective standard of reasonableness. Moreover, given the circumstantial evidence outlined above, defendant has not demonstrated a reasonable probability that, but for defense counsel's alleged errors, the result of his trial would have been different.

## C. CUMULATIVE ERROR

Finally, defendant argues that defense counsel's concessions and failure to request a "mere presence" instruction combined to prejudice defendant by foreclosing his only defense and undermining confidence in the verdict. This Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied defendant a fair trial. *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). Notably, the test is not whether irregularities occurred at trial, but whether defendant was denied a fair trial because of irregularities. *Id*. at 387-388. As recognized by this Court:

> The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal. In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence. In other words, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial. [*Id*. at 388 (citations omitted).]

For the reasons explained earlier, defense counsel's tactical decision to concede that defendant had some involvement in the charged crimes and his decision not to request a "mere presence" instruction did not constitute error. "Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

We vacate defendant's conviction and sentence for breaking and entering with intent to commit larceny. We affirm defendant's remaining convictions. We vacate defendant's remaining sentences and remand for resentencing in light of this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle