*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JAMAR GRIMES,

        Defendant-Appellant.

UNPUBLISHED
December 12, 2024
10:28 AM

No. 369373
Monroe Circuit Court
LC No. 2023-247556-FH

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction for one count of aggravated domestic violence, second offense, MCL 750.81a(3). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 42 to 180 months' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's July 15, 2023 assault of complainant while the two were driving in complainant's car, after defendant and complainant left a gathering at the home of one of complainant's family members in Petersburg, Michigan. Defendant and complainant were in a domestic relationship for approximately 3½ years at the time of the subject incident.

In the evening of July 15, 2023, defendant and the complainant spent the day together, and the two attended a pig roast at the residence of one of complainant's family members. Defendant and complainant left the event at approximately 9:00 p.m. to pick up complainant's daughter. Before driving away from the premises, complainant and defendant were seated in complainant's car, when defendant received a phone call from a woman named "Jenny." Complainant testified that she was under the belief that defendant was romantically involved with "Jenny." Defendant and complainant proceeded to argue in complainant's car, resulting in defendant striking complainant on the head multiple times, grabbing her by the hair, and chipping her tooth. Complainant, who was driving the car, pulled over to a parking lot, where they were met by law enforcement near Dundee, Michigan. Due to the aforementioned conduct, defendant was detained and subsequently charged with one count of aggravated domestic violence.

On October 17, 2023, after a one-day bench trial, the trial court found defendant guilty of aggravated domestic violence, opining that the paramedic's testimony indicated complainant required immediate medical treatment for her injuries, and the record provided that complainant was "bleeding from various parts of her body . . . [and] her tooth [was] chipped or broken." The court further determined that the aforementioned facts were sufficient to prove beyond a reasonable doubt that complainant sustained a serious, aggravated injury, and the trial court subsequently stated (1) the relationship between complainant and defendant was domestic in nature, as the two had a dating relationship, (2) defendant intentionally assaulted complainant, and (3) complainant's injuries could not be attributed to defendant's alleged self-defense. In December 2023, defendant was sentenced as previously provided. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of aggravated domestic violence. We disagree.

"To the extent that defendant sets forth a claim challenging the sufficiency of the evidence, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence to support his or her conviction." *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *Id.*, quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

A person is guilty of aggravated domestic violence, MCL 750.81a(2), under the following circumstances:

> [A]n individual who assaults the individual's spouse or former spouse, an individual with whom the individual has or has had a dating relationship, an individual with whom the individual has had a child in common, or a resident or former resident of the same household without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or inflict great bodily harm less than murder . . . .

The prosecution bears the burden to prove each element of the crime beyond a reasonable doubt. *Nowack,* 462 Mich at 400. One element of aggravated domestic violence that must be proven beyond a reasonable doubt is whether the assault caused a serious or aggravated injury. M Crim JI 17.2a. The trier of fact determines "what inferences may be fairly drawn from the evidence" and "the weight to be accorded those inferences." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).

This Court has interpreted "serious or aggravated injury" in the context of aggravated domestic assault as a "substantial bodily (physical) injury or injury that necessitated immediate medical treatment or caused disfigurement, impairment of health or impairment of any bodily part." *People v Brown*, 97 Mich App 606, 611; 296 NW2d 121 (1980) (quotation marks and

-2-

citation omitted)[1]; see *People v Norris*, 236 Mich App 411, 415 n 3; 600 NW2d 658 (1999) (stating because no Michigan case defines "serious injury" for the purposes of the relevant statute, the definition as explained in *Brown* applies).

In *Brown*, 97 Mich App at 610-611, the defendant appealed his conviction of aggravated assault, MCL 750.81a, and he claimed that the prosecution failed to provide sufficient evidence to prove the complainant sustained a serious or aggravated injury. Several witnesses testified to the complainant's injuries at trial, confirming the complainant had been "rendered unconscious by the blow to the head" and "suffered cuts to his face, an eye injury, and a bruised neck." *Id*. at 611. This Court stated that this evidence was "sufficient to justify a reasonable person in concluding that defendant inflicted a serious or aggravated injury on complainant." *Id*. This Court further explained that "the need to seek immediate medical attention is only one factor used in determining whether the element is established." *Id*. This Court also rejected the assertion that expert testimony is required to confirm whether an individual has sustained a serious or aggravated injury, stating, "[w]e know of no such requirement, and decline to imply one." *Id*.

The instant case presents similar facts to *Brown*. At trial, complainant testified to the extent of her injuries, noting that her mouth, nose, and head were all bleeding, and she had a scratch on her lip, due to defendant's conduct. Complainant further stated that she may have lost consciousness and she suffered a chipped tooth, in addition to bruising and lumps all over her face, and an injury to her ear. Deputy Ost, a deputy employed by the Monroe County Sherriff's Office who responded to the scene, described the injuries sustained by complainant, stating that she found complainant with blood on her top and her jeans. Deputy Ost also expressed that complainant was missing a tooth, and the "right side of her ear was red and swelling." Deputy Ost contacted emergency medical services (EMS) due to the severity of complainant's injuries. Deputy Ost verified the photographs she took of complainant's injuries in the ambulance immediately following the incident. Deputy Ost further testified to what they depicted, including the blood on her face and shirt, and the injuries to her face and ear, thus substantiating the extent of complainant's injuries. Moreover, Ruth Magrum, a paramedic employed by Monroe Community Ambulance who responded to the scene, testified that complainant had a "decent amount of head wounds" and several broken teeth, in addition to dizziness, blurred vision, and a headache. Magrum noted that these symptoms were indicative of a possible concussion or "brain bleed," and she recommended that complainant go to the hospital, but she did not transport complainant there.

In the instant matter, the evidence presented regarding complainant's injuries is directly comparable to the evidence presented in *Brown*. Multiple witnesses described complainant's injuries, and photographs of the injuries to her head and face were admitted as evidence. Defendant claims injuries such as lumps, bruises, and a chipped tooth do not establish a serious or aggravated injury, but that assertion is not supported by caselaw. A trier of fact may reasonably conclude such evidence demonstrated complainant sustained a serious or aggravated injury, as explained in

---

[1] *Brown* is not strictly binding precedent, as it was issued prior to November 1, 1990, but as a published opinion, "has precedential effect under the rule of stare decisis." *People v Darga*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363178); slip op at 9, n 6. This interpretation of "serious or aggravated injury" has remained the standard used by this Court.

*Brown*. In rendering its decision, the trial court stated it was "clear from all exhibits that [complainant] required immediate medical treatment." The court cited the testimonies and photographs detailing complainant's bleeding wounds and it opined that the "serious disfigurement in that her tooth is chipped or broken" established the serious and aggravated injury element of the aggravated domestic violence offense. Furthermore, defendant's initial argument, that expert testimony should have been required to prove the extent of the injuries in this case, is without merit, as defendant concedes such expert testimony is not necessary.

A reasonable trier of fact could find that the evidence presented by the prosecution in the instant case proved that complainant suffered from serious or aggravated injuries as a result of defendant's assault. Therefore, the prosecution's evidence was sufficient to support defendant's conviction.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues he was denied effective assistance of counsel due to trial counsel's failure to request that the trial court view the entirety of the deputy's body-worn camera footage. We disagree.

In order to preserve an ineffective assistance of counsel claim for appellate review, a defendant must move for a new trial or request an evidentiary hearing in the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant may also file with this Court a motion for remand to the trial court for a *Ginther*[2] hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant filed a motion for remand in this Court to further develop the evidentiary record by determining which portion of Deputy Ost's body-worn camera footage was played for the trial court; this Court denied the motion.[3] Thus, this Court's review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *Heft*, 299 Mich App at 80 (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake." *Abcumby-Blair*, 335 Mich App at 227-228 (quotation marks and citation omitted).

"To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft*, 299 Mich App at 81. "Effective assistance of counsel is presumed." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant bears the burden to prove defense counsel did not provide effective assistance. *Heft*, 299 Mich App at 80. "A defendant

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] See *People v Grimes*, unpublished order of the Court of Appeals, entered July 2, 2024 (Docket No. 369373).

must overcome a strong presumption that counsel's actions constituted sound trial strategy." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

A defendant bears the burden of "establishing the factual predicate for his claim of ineffective assistance of counsel." *Id*. at 189, quoting *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). If a defendant fails to meet that burden, "this Court could find . . . that defendant's claims of ineffective assistance of counsel fail." *Id*. In *Solloway*, 316 Mich App at 188-189, this Court stated that mere claims of counsel's actions falling below an objective standard of reasonableness are not sufficient to establish deficient representation—these claims require factual and legal support. The defendant in *Solloway*, 316 Mich App at 190, claimed counsel was ineffective for failing to produce complainant's medical records at his trial for first-degree criminal sexual conduct, MCL 750.520b(1)(a). This Court stated that counsel is not ineffective for failing to produce the records, as "[t]he decision of what evidence to present is also presumed to be a matter of trial strategy." *Id*. This Court further explained that the defendant provided no basis for why the medical records would have been relevant to the case; thus, the defendant failed to overcome the presumption of sound trial strategy. *Id*.

In the instant case, defendant claims defense counsel's failure to present the first eight minutes of the video indicates that he did not watch the video at all, but provides no factual basis to support that assertion. There is nothing in the record to indicate defense counsel did not watch the video in its entirety. Further, there is nothing in the record indicating what portion of the video was played for the trial court, therefore, it is undetermined if any portion of the first eight minutes was included in the aforementioned footage. Defendant failed to provide a factual basis for the assumption that the first eight minutes were not played for the trial court. Defendant must overcome the presumption of effective assistance of counsel, and has failed to meet that burden by failing to establish a factual basis for his claim.

Furthermore, defendant provides no factual or legal basis to support his claim that the first eight minutes of the body-worn camera video were exculpatory, or why defense counsel's conduct fell below the objective standard of reasonableness by failing to present it. In *People v Dunigan*, 299 Mich App 579, 589, 831 NW2d 243 (2013), the defendant challenged his conviction of second-degree home invasion, MCL 750.110a(3). The defendant claimed his defense counsel's failure to obtain casino records as evidence of an alibi and impeachment amounted to ineffective assistance of counsel. *Id*. at 590. This Court disagreed, stating that defense counsel's decisions regarding what evidence to present are "presumed to be a matter of trial strategy, and we will not second guess strategic decisions with the benefit of hindsight." *Id*. This Court further explained various reasons defense counsel may have decided not to obtain these records, such as to prevent the jury from making negative inferences about how the defendant obtained the money to gamble. *Id*. at 590. Additionally, this Court determined that the records did not provide an alibi and did not place him elsewhere at the time the crime was committed, as the defendant claimed. *Id*.

In the instant matter, there are plenty of potential reasons for defense counsel to decide not to play the first eight minutes of the body-worn camera video. The aforementioned footage portrays defendant yelling to the police "she put her f****** hands on me" and complainant sitting on the ground smoking a cigarette, with blood all over her face and shirt. As complainant explained the events to Deputy Ost, complainant states that she passed out after defendant hit her, and that "he whooped [her] a**" and chipped her tooth. Complainant briefly starts to cry, and

Deputy Ost insists on a medical evaluation. Defendant can be heard yelling in the background during the first two minutes of the video.

Defense counsel could have made a reasonable strategic decision not to play this portion of Deputy Ost's body-worn camera footage for the court, as it depicted the injured complainant on the ground with agitated defendant yelling in the background. No portion of the video refutes the severity of her injuries, and it actually portrays Deputy Ost insisting on a medical evaluation by EMS for complainant. Defendant states that during the first eight minutes of the aforementioned footage, complainant was portrayed "sitting on the ground, smoking a cigarette," and "not crying or complaining of pain." This statement is without merit, as complainant states many times in the video that defendant hit her, she was beat up, she was dizzy, that her orbital bone was broken, her ear was in a lot of pain, and she "absolutely" lost consciousness. While defendant contends that this is "the one piece of evidence that would have shown [complainant] did not suffer a serious or aggravating injury[,]" this assertion is not supported by the record, and defense counsel's possible decision not to request this footage be played for the court should be considered sound trial strategy. Defendant has not met his burden to prove otherwise; therefore, his claim for ineffective assistance of counsel fails.

Even if defense counsel's decision not to play the entirety of the body-worn camera footage fell below the objective standard of reasonableness, defendant was not prejudiced by the decision. See *Heft*, 299 Mich App at 81 (stating that for a defendant to succeed on an ineffective assistance of counsel claim, it must be shown that "there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant.") A defendant is prejudiced by defense counsel's deficient performance when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (citation omitted). The prosecution presented multiple photographs and witness testimonies at trial to establish the extent of complainant's injuries. Deputy Ost verified the photographs, and testified to the extent of the injuries they depicted on complainant's head and face. Defense counsel cross-examined witnesses regarding the injuries. He specifically questioned paramedic Magrum on whether complainant's vitals mandated a hospital transport by ambulance, presumably to raise doubts on the severity of complainant's injuries and the need for immediate medical treatment. The trial court was presented with sufficient evidence to reasonably conclude complainant suffered a serious or aggravated injury, and could have reached that conclusion even if it had viewed the footage in its entirety; therefore, defendant was not prejudiced by defense counsel's conduct.

Defendant has not provided a factual basis to show defense counsel's conduct fell below an objective standard of reasonableness. There are no apparent errors by trial counsel on the record to support this claim, nor was defendant prejudiced by defense's counsel's conduct. Therefore, defendant has failed to establish that he is entitled to relief on ineffective assistance of counsel grounds.

Affirmed.

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney